| IN THE MATTER OF THE SEARCH OF THE RESIDENCE OF DARRELL ARMSTRONG, AKA "DIESEL," WHICH IS LOCATED AT 1414 MEADOWLARK LANE CHATTANOOGA, TN. | Case No. 1:17-MJ-94<br><br>**Filed Under Seal** |
|---|---|

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with

1

respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from East Tennessee State University and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant of the residence and premises located at the following location: 1414 Meadowlark Lane Chattanooga, Tennessee, the residence known by your Affiant to belong to Darrell ARMSTRONG, AKA "Diesel." The information contained in this affidavit has been obtained through observations by your Affiant, interviews with fellow law enforcement officers, and an ATF Confidential Informant (CI) throughout the course of this investigation. Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the court to make a finding of probable cause.

3. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to: drug paraphernalia, scales, and packaging materials suitable for particular substance(s), records and notes (including computer and electronically stored) of controlled

2

substance transactions, money (proceeds of or capital for controlled substance(s) transactions), firearms kept for protection, stolen property (often traded for controlled substances), electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true

ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based upon training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. In your Affiant's training and experience, users of and traffickers in controlled substances, when hiding or transporting controlled substances or cash, commonly conceal them in several separate "stashes," often in several rooms of a building, outbuilding, vehicles, and in public or common areas which can be kept under their observation. Narcotics traffickers will also often place assets in names other than their own to conceal their assets from law enforcement.

7. Your affiant is aware that narcotics traffickers sometimes utilize multiple "stash locations" in an attempt to keep large quantities of controlled substances separate. Based on your Affiant's training and experience, your Affiant knows this to be done so that law enforcement cannot seize all of the controlled substance at one time if law enforcement is alerted to the location of a single "stash location." This is also done in an attempt to secrete controlled substances from non-law enforcement personnel in an attempt minimize the potential of a robbery by individuals seeking to take possession of controlled substances during armed robberies, home invasions, or routine thefts.

8. It has also been your Affiant's training and experience that those who use or traffic in controlled substances, especially when law enforcement appears, will attempt to physically separate themselves from the controlled substances. They often do this by placing a controlled substance in a "neutral" location. They often employ intermediaries as couriers and drivers, to store drugs or conduct transactions. These intermediaries often include associates, but may also be extended to women, juveniles, or older people. Traffickers will use these individuals to transport controlled substances or otherwise assist the operation. These "mules" (as they are sometimes called) hold or transport the controlled substances or cash, allowing the dealer to stay "clean." Traffickers will also often "hand off" incriminating evidence to another person if confronted by law enforcement. In sum, these methods are used to attempt to insulate traffickers from risk of detection and apprehension by law enforcement.

9. Based upon your Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 USC §§ 841(a)(1) and

846 have been committed by Darrell ARMSTRONG, AKA "Diesel," and known and unknown co-conspirators.

## PROBABLE CAUSE

10. Your Affiant is currently participating in an investigation involving illegal drug trafficking in the Eastern District of Tennessee. An investigation conducted by the ATF and the Chattanooga Police Department (CPD) has identified Darrell ARMSTRONG, AKA "Diesel," (hereinafter referred to as ARMSTRONG) as being responsible for the distribution of large quantities of powder cocaine, cocaine base, and marijuana throughout the Chattanooga, Tennessee area. The investigation was initiated by the development of information given by an ATF CI. The CI has previously provided reliable information regarding individuals selling narcotics. The CI has also provided information regarding criminal activity to include individuals selling narcotics, which has been independently corroborated by other agents/officers as accurate. At least one arrest has been made based on the CI's information, and several search warrants have been procured on the CI's information as well. Accordingly, your Affiant submits that the CI has proven reliable.

11. In October 2016, the CI provided ATF special agents with information that ARMSTRONG frequently sold powder cocaine, cocaine base (crack), and marijuana throughout Chattanooga, Tennessee. According to the CI, ARMSTRONG primarily stored and sold the narcotics from his residence, located at 3900 6th Avenue Chattanooga, Tennessee. The CI stated that he/she has been present when ARMSTRONG sold narcotics, has purchased narcotics from ARMSTRONG, and that ARMSTRONG was known to

associate with and supply street gang members throughout the Chattanooga, Tennessee, area with narcotics. Affiant is aware that Armstrong is a validated member of the Athens Park Bloods street gang. The CI also made monitored telephone communications with ARMSTRONG to arrange drug transactions.

12. Between October 2016 and December 2016, the CI made at least six controlled buys from ARMSTRONG of either powder cocaine or cocaine base (crack) from inside ARMSTRONG's residence, located at 3900 6th Avenue Chattanooga, Tennessee. During each controlled purchase, the following controls were put in place:

   a. Prior to each controlled purchase, under the direction and control of your Affiant, the CI met with your Affiant at a pre-determined location and was physically checked or searched by your Affiant or another law enforcement officer for any type of contraband.

   b. The CI was provided with official government funds to purchase narcotics from ARMSTRONG.

   c. The CI was outfitted with an audio listening device, which was monitored by your Affiant during each controlled purchase.

   d. Law enforcement maintained a constant visual of the CI and his/her vehicle from the pre-buy location to ARMSTRONG's residence for each narcotics purchase.

   e. Following each controlled purchase, the CI was surveilled by your Affiant and law enforcement assisting with the operation to a pre-determined location, where law

7

enforcement immediately retrieved narcotics and the audio listening device from the CI.

    f.  A constant visual of the CI was maintained at all times other than when the CI was in ARMSTRONG'S residence. The CI was additionally searched or checked for contraband by your Affiant or another law enforcement officer following each controlled purchase.

13.    In January 2017, the CI provided your Affiant with information that ARMSTRONG had moved and that ARMSTRONG's new residence was located at 1414 Meadowlark Lane Chattanooga, Tennessee. According to the CI, he/she had recently been to ARMSTRONG's residence shortly after ARMSTRONG had moved in, and ARMSTRONG was continuing to store narcotics, primarily large quantities of marijuana, in his residence.

14.    Based on the information provided by the CI, between January 2017 and March 2017, your Affiant conducted surveillance at 1414 Meadowlark Lane. During surveillance, your Affiant frequently observed a silver Nissan sedan, as well as a 2005 Chrysler 300, Tennessee Tag W10-06L, parked in the driveway of the residence. Based on surveillance and CI information, Affiant knows that the Chrysler 300 belongs to ARMSTRONG. The vehicle has been used by ARMSTRONG to conduct additional controlled sales of narcotics to the CI (which did not occur at ARMSTRONG's residence). While conducting surveillance at 1414 Meadowlark Lane, law enforcement observed ARMSTRONG coming and going from the residence at various times throughout the day and night, as well as driving the Nissan sedan

in addition to the Chrysler 300. Both vehicles were frequently parked at the residence late at night and early in the morning.

15. In March 2017, at the direction of Affiant, the CI made a controlled purchase of a resale amount of marijuana from ARMSTRONG from inside 1414 Meadowlark Lane. During the controlled buy, all aforementioned controls with the CI were in place.

16. Within the past week, the CI made an additional controlled purchase for a resale amount of marijuana from ARMSTRONG. During the operation, the CI met ARMSTRONG at a predetermined location for the narcotics purchase. Once at the meeting location, the CI provided ARMSTRONG with marked official government funds to purchase the marijuana. ARMSTRONG was observed driving a Nissan sedan, Tennessee Tag 834-RDP, to the controlled purchase. The vehicle matched the description of the same Nissan sedan previously observed by your Affiant driven by ARMSTRONG, as well as frequently parked at ARMSTRONG's residence. All aforementioned controls with the CI were in place during the operation.

17. Following the controlled purchase, the CI stated that ARMSTRONG had additional marijuana with him that he was willing to sell. A review of the audio of the controlled purchase corroborated the CI's statements.

18. Within the past 96 hours, the CI provided your Affiant with information that he/she had received information that ARMSTRONG and an unknown associate had conducted an armed home invasion in the Chattanooga, Tennessee area, and that ARMSTRONG and his

9

Case 1:17-mj-00094-CHS   Document 2   Filed 05/10/17   Page 9 of 14   PageID #: 10

unknown associate had stolen narcotics and a large sum of cash. According to the CI, the armed home invasion occurred within the past 96 hours as well.

19. The CI further stated that within the past 72 hours, he/she went to ARMSTRONG's residence located at 1414 Meadowlark Lane. While at the residence, the CI stated that he/she observed ARMSTRONG selling marijuana to multiple people from inside the residence. The CI additionally stated that he/she observed ARMSTRONG in possession of what he/she estimated to be a "couple" pounds of marijuana inside the residence in addition to the marijuana the CI observed ARMSTRONG selling, as well as several stacks of what the CI described as a large sum of cash.

20. WHEREFORE, based upon the facts detailed above, together with your Affiant's training and experience in drug trafficking investigations, your Affiant believes and submits there is probable cause to believe that the premises located at 1414 Meadowlark Lane Chattanooga, Tennessee,, including the residence, outbuildings, vehicles, and curtilage located herein described will contain evidence of drug trafficking, particularly of marijuana, cocaine base, and cocaine powder in violation of Title 21, United States Code, Section 841. These fruits, evidence and instrumentalities of crimes against the United States of America are described with particularity in Attachment B.

Sworn to and subscribed before me this ___ day of May 2017.

_____
Christopher H. Steger
United States Magistrate Judge

Respectfully submitted,

_____
Adam Baldwin
ATF Special Agent

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED - 1:17-mj-94

1414 Meadowlark Lane Chattanooga, Tennessee is a one-story structure. The roof is covered with grayish-black aluminum shingles, and the front, sides, and back of the structure are covered with gray and cream-colored siding. Affiant has been to the residence. The residence is associated with Darrell ARMSTRONG.

ARMSTRONG's residence is the third house on the right side of the street when turning left onto Meadowlark Lane from East Brainerd Road in Chattanooga, Tennessee. The front porch of ARMSTRONG's residence has a concrete step leading up to the porch. Both the step and front porch are painted green. The porch is also covered by a maroon awning. The front door to the residence is located in the middle of the porch, and has a white screen door. The carport and driveway for the residence is located on the right side of the structure when facing the residence from the street.



Directions to 1414 Meadowlark Lane Chattanooga, TN

To arrive at 1414 Meadowlark Lane Chattanooga, TN from Interstate 75 North in Chattanooga, TN, take exit 3A from Interstate 75 North to merge onto East Brainerd Road. Continue on East Brainerd Road for approximately 1.3 miles, then turn left onto Meadowlark Lane. After approximately 361 feet, 1414 Meadowlark Lane will be on the right side of the street. The residence is the third house on the right.

1

1:17-mj-94

## ATTACHMENT B

1. Books, records, receipts, notes, ledgers, codes, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, including, but not limited to marijuana, cocaine base, and powder cocaine.

2. Books, records, receipts, notes, ledgers, codes, and other papers and electronic records related to the transportation, ordering, purchasing and distribution of firearms and controlled substances.

3. Books, records, receipts, bank statements and records, financial statements, loan applications and records, wills, real estate records, money drafts, letters of credit, money orders and cashier's checks, safe deposit box keys, records and agreements, and other documents evidencing the obtaining, secreting, transferring, and/or concealing of assets and the obtaining, secreting, transferring and/or concealing of currency equivalents.

3. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds.

4. Photographs, videotapes, slides, and other visual depictions of the occupants and owner(s) of 1414 Meadowlark Lane Chattanooga, TN, controlled substances, notes, records, diaries, journals and papers, and/or assets.

5. Indicia of occupancy, residency, and/or ownership of the premises or other assets including, but not limited to, utility and telephone bills, cancelled checks, and keys.

6. Firearms, ammunition and items associated with firearms, i.e. magazines, accessories,

1

holsters, and gun cases.

7. Sales receipts for items evidencing the expenditure of currency or currency equivalents.

8. Paraphernalia for packaging, weighing, cutting, and distributing controlled substances, including but not limited to, scales, plastic bags, trash compactors, and chemical test kits.

9. Documents, books, and papers reflecting names, addresses and/or telephone numbers pertaining to, but not limited to the occupants and owner(s) of 1414 Meadowlark Lane Chattanooga, TN.

10. Computer equipment, programs, storage disks, cellular phones and printouts evidencing the distribution of controlled substances, the expenditure of currency or currency equivalents and/or indebtedness to and loan repayments to the individual(s) listed in paragraph two above.

11. Books, records, receipts, notes, ledgers, invoices, bank records, purchase records, cash receipts and disbursement journals, inventory records, and other records relating to the operation of a controlled substances distribution network.

12. Cellular telephones, including the electronic address book, stored memory feature and the SIM card (or similar type of electronic data storage card) of the cellular telephone.

13. Controlled substances, to include, but not limited to, cocaine base and powder cocaine.

14. All of which are fruits, evidence and instrumentalities of crimes against the United States of America; that is possession and possession with the intent to distribute controlled substances by the occupants and owner(s) of 1414 Meadowlark Lane Chattanooga, TN, in violation of Title 21 U.S.C. §§ 841(a)(1) and 846.